396

DEGA POULTRY COMPANY et al *v.*
Lowell TANNER

75-250                                  533 S.W. 2d 207

Opinion delivered March 1, 1976

*Alex G. Streett,* for appellants.

*Priddy & Hardin,* for appellee.

GEORGE ROSE SMITH, Justice. Salmonella paratyphoid is an infection that may be contracted by human beings, chickens, dogs, cats, turtles, and many other animals. It totally disabled the appellee, Lowell Tanner, for about ten months. In this workmen's compensation case the Commission made an award to Tanner, finding that he contracted the infection in the course of his employment by the appellant

Dega Poultry Company. The employer and its insurance carrier argue two points for reversal.

First, it is contended that the claimant's affliction was neither an accidental injury nor one of the occupational diseases listed in the statute. Ark. Stat. Ann. § 81-1314 (Repl. 1960). Hence, it is said, the claimant is not entitled to compensation, because his disability does not fall within either of two compensable categories: Accidental injuries and occupational diseases.

This argument overlooks the possibility of a third compensable category: Occupational infections. Whether such a third category existed under our original workmen's compensation act is perhaps open to question, because that statute referred to "such occupational disease or occupational infection as arises naturally out of such employment." Act 319 of 1939, § 2. Manifestly the legislature might have been using "occupational infection" merely as a synonym for "occupational disease" rather than as a reference to a separate affliction.

The 1948 revision of the statute set the issue at rest. It refers specifically to "occupational diseases as set out in section 14 [which lists compensable occupational diseases] and occupational infections arising out of and in the course of employment." Ark. Stat. Ann. § 81-1302 (d). Here the reference to occupational infections is meaningless unless it adds something to the enumerated occupational diseases. Of course we must assume that the legislature intended for its words to have meaning.

In the case at bar the Commission's opinion shows that it understood the distinction between an occupational disease and an occupational infection and that it found the claimant's disability to be the result of the latter. Our statute does not define occupational infection — a term that seems to be extremely rare in compensation acts. Thus what is or is not an occupational infection becomes an issue of fact. As we shall see in a moment, there was ample evidence to support the Commission's finding that salmonella paratyphoid was an occupational infection as to this claimant.

The appellants argue, secondly, that there is no substantial proof that Tanner's salmonellosis arose out of his employment. We do not agree. To the contrary, the evidence supporting the Commission's award is so one-sided as to suggest the view that we took in *Hall* v. *Pittman Constr. Co.*, 235 Ark. 104, 357 S.W. 2d 263 (1962): "If the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the Commission's refusal to make an award."

The claimant, Tanner, might be termed a practical veterinarian, for he had worked with licensed veterinarians for some 22 years, had studied the subject in magazines, and had worked for the appellant, Dega Poultry Company, for four years. His duties included inspecting the various Dega flocks of chickens for disease and recommending treatment. He believed that he contracted salmonella paratyphoid from the Akin flock (one of the Dega flocks), because those chickens were sick and had the same symptoms that he developed. The Akin flock was unquestionably afflicted with some disease and had to be sold before maturity.

Dr. Teeter, who treated Tanner, testified that salmonella paratyphoid is a rare disease and so difficult to diagnose that it took his clinic several months to identify Tanner's malady. The infection is found in the digestive tract of human beings, chickens, and other creatures. The claimant, as part of his work for Dega, stripped out the intestines of chickens in the course of performing post mortem examinations for disease. Dr. Teeter testified positively that Tanner had the disease, "and again I think it likely that he contracted it by working with some chickens that were infected." That testimony cannot be laid aside as insubstantial.

Dr. Davis, a veterinarian, testified that poultry products are a common source of salmonellosis. (We may note that one form of that infection is called "fowl typhoid." Webster's Second New International Dictionary [1934].) This witness said that the germ of salmonella paratyphoid can be isolated without any particular difficulty if the culture is made from the chickens' fecal matter.

The appellants rely principally upon the testimony of Dr. Fields, another veterinarian. Dr. Fields examined chickens from the afflicted Akin flock on three occasions. He did not find any salmonella organisms. On direct examination he said that such an organism would ordinarily have shown up in his culture type examination, but on cross examination he admitted that he was not looking specifically for salmonella paratyphoid and could have overlooked it. He described it as an enteric organism, which means that it is found within the intestines. The witness testified that he did not perform fecal examinations. The Commission could reasonably have concluded that Dr. Fields' testimony did not exclude the Akin flock as the source of Tanner's infection.

According to all the testimony there is a strong probability that Tanner was infected by the Akin flock. But even if he contracted the disease from other chickens, it would still have been in the course of his employment, for he seems to have handled only Dega birds. Even the flock that Tanner was raising on his own farm belonged to Dega. Unless a claimant must prove the source of an infection with absolute certainty — a manifest impossibility — Tanner's proof amply supports the Commission's award.

Affirmed.